IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PRISON HEALTH SERVICES, INC.<br>105 Westpark Drive<br>Suite 200<br>Brentwood, Tennessee 37027 | : : : : : | |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : | |
| EMRE UMAR<br>818 Hidden Forrest Drive<br>Collegeville, PA | : : : : : | |
| and | : : | |
| CORRECTIONAL MEDICAL<br>  CARE, INC.<br>818 Hidden Forrest Drive<br>Collegeville, PA   19426 | : : : : : | No.  02-CV-2642 |
| Defendants | : : : | |

**MEMORANDUM OF DEFENDANT CORRECTIONAL MEDICAL CARE, INC.
IN OPPOSITION TO PLAINTIFF'S MOTION
FOR A TEMPORARY RESTRAINING ORDER**

For almost seven months, as the result of the award of two prison health care contracts in New York in the fall of 2001, plaintiff Prison Health Services, Inc. ("PHS") has known that defendant Correctional Medical Care, Inc. ("CMC") was formed to compete against it. For almost seven months PHS has had information that the name of the defendant Emre Umar was also associated with CMC. PHS belatedly now brings this

lawsuit to try to enforce a restrictive covenant it obtained from Emre Umar as a means of preventing further competition from CMC. In doing so, it suddenly pleads for emergency relief so that it will become the only bidder left to be awarded a contract for the Montgomery County Correctional Facility. ("MCCF") Regardless of the enforcability of the restrictive covenant against defendant Umar, the covenant provides no basis for enjoining MCCF from its scheduled May 9 vote to confirm the award of the contract to CMC or for enjoining CMC from proceeding to perform that contract.

This "emergency" scenario is before the court only because PHS failed in a scheme to extract more money from MCCF. As PHS acknowledges in its motion papers, it has held an MCCF contract since 1987. What it does not tell the court, however, is that with two years left to go on its current contract, PHS decided to terminate the contract. PHS did so knowing that this would require MCCF to put a new contract out for bid. PHS thought that it would be the only bidder for the new contract and that it could then bid a higher amount than it was getting under the contract it had just terminated. So PHS would make more money. But the scheme backfired 1) because CMC entered the bidding in Montgomery County and submitted the low qualifying bid and 2) because, having been the intended victim of the PHS scheme, MCCF likely has little interest in now dealing with PHS.

A temporary restraining order should not become the vehicle by which PHS can revive its scheme of double dealing with MCCF and the taxpayers of Montgomery County. The contract award process should run its course. The MCCF Board should

2

proceed to vote on May 9 on whether to confirm the contract award to CMC, and CMC should start performance as scheduled on May 31.

Even a delay of a week to ten days in MCCF proceeding with the vote would cause an imbalance of harm to CMC, MCCF and the public. PHS would have more time to further poison the attitudes of the staff at MCCF against CMC with defamatory remarks that PHS has been making about CMC's bona fides and viability. CMC would have to suspend the considerable efforts it is now making to prepare for operations beginning May 31, e.g. formalizing its arrangements with a medical director; arranging for malpractice and workman's compensation insurance; securing employment commitments from PHS employees who want to remain working at the facility; and securing health insurance coverage for employees effective May 31 so they do not have to use there own money to obtain COBRA rights on PHS's health insurance coverage in order to avoid a gap in coverage. A suspension of these preparatory efforts pending the outcome of a preliminary injunction hearing, even if that hearing is decided before May 31, will put CMC in such a time squeeze upon any resumption of its efforts that it could not smoothly begin operations on May 31. It will then be the quality of care to the inmates that could suffer.

Similarly, a suspension of progress toward an orderly transition will only cause confusion at the facility itself, deplete the morale of existing employees and perhaps lead to lawsuits from what is already a litigious inmate population.

3

The proper application of the criteria for granting a temporary restraining order can not justify anything but an orderly award of the contract and transition to CMC management as currently scheduled.

<u>Probability of success on the merits.</u> We expect that Emre Umar will raise issues as to the reasonableness of the five year duration of the restrictive covenant. The award of a prison health care contract does not turn on good will that any single individual has with an awarding authority. It turns own who is the lowest qualified bidder in an impersonal statutorily mandated bidding process. It is therefore improbable that a term as long as five years is reasonably necessary to allow the good will that a prison authority has for a seller of a prison health care company to attach to the buyer. Two years is more than enough and two years has already elapsed.

In any event, even if the covenant were deemed reasonable and enforceable, on its face it does not apply to either CMC or to MCCF. CMC's alleged liability is for tortious interference with contract. It did not interfere with any contract between PHS and MCCF, because that contract was abandoned by PHS; it did not even exist at the time CMC submitted its bid. It did not interfere with the non-competition agreement because, contrary to PHS's conclusory allegations, CMC is viable and successful independent of Emre Umar.

Formed in May 2001, CMC is owned by Maria Carpio-Umar and Kevin Duffy. Ms. Carpio-Umar, who has divorce proceedings pending with Mr. Umar, provides the

financial backing and corporate administration for CMC; Mr. Duffy provides operational expertise. Neither is a "front" for Emre Umar.

Moreover, as described above, there are laches and unclean hands defenses that can be asserted against PHS. This emergency situation is of its own making. If it was really concerned about Mr. Umar and CMC, it should have acted months ago when it first knew of their association. Instead it has waited to act until the entire MCCF bidding procedure is about to be finalized, trying to have the court believe that keeping PHS on the scene at MCCF so it can eventually charge more money is necessary to maintain the status quo.

<u>Irreparable harm.</u>  There is none. As to defendant CMC, the issue is whether there is any irreparable harm to PHS if CMC is allowed to proceed with the MCCF contract. If it is ultimately determined that it obtained that contract as a result of a tortious interference, then the damages to PHS will be easily defined and calculable. They will essentially be the profits it would have made had it been awarded the MCCF contract based on its proposal. A more simple and adequate remedy at law is hard to imagine.

Moreover, this is not a case where PHS will have paid for and lost the incalculable benefit of good will that it had with MCCF if CMC obtains that contract. As PHS acknowledges, it has had the MCCF contract for over 15 years. It therefore never paid Correctional Physicians Services Inc. or Emre Umar to obtain any good will vis a vis MCCF. It was PHS, not Mr. Umar or his prior company, which itself had that good will

5

all along.  It was then not CMC or Emre Umar who misappropriated that good will.  It was PHS which itself squandered it by terminating the MCCF contract in an all too clever attempt to make more money.

<u>Granting a TRO will result in greater harm to CMS and to the public interest.</u>  As discussed above, any harm to PHS from the denial of injunctive relief against CMC is easily remedied by a suit for money damages in the nature of lost profits on the MCCF contract.  On the other hand the harm to CMC and to the public interest as represented by MCCF and the taxpayers of Montgomery County by granting an injunction, even temporarily, is demonstrable and not capable of remedy.  There is simply no reason to let PHS salvage its scheme to charge more to the taxpayers, or to  subject CMC or MCCF to the uncertainty and potential harm to the smooth  administration of prison health care, that could follow from any injunction.

        MANN, UNGAR, SPECTOR & LABOVITZ, P.C.

        */s/ Larry H. Spector*

        LARRY H. SPECTOR
        MICHAEL D. LIPUMA

        1709 Spruce Street
        Philadelphia, PA   19103
        (215) 732-3120

## CERTIFICATE OF SERVICE

I certify that on May 7, 2002, a true and correct copy of the foregoing Entry of Appearance was served by facsimile and regular mail on counsel below:

Carol Mager
MAGER WHITE & GOLDSTEIN, LLP
One Liberty Place, 44th Floor
1650 Market Street
Philadelphia, PA   19103

Francis X. Clark
The Woods, Suite 705
987 Old Eagle School Road
Wayne, PA   19087

_____
LARRY H. SPECTOR