IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PRISON HEALTH SERVICES, INC.** : | |
| : | |
| **Plaintiff,** : | CIVIL ACTION |
| : | No. 02-CV-2642 |
| v. : | |
| : | |
| **EMRE UMAR** : | |
| : | |
| and : | |
| : | |
| **CORRECTIONAL MEDICAL** : | |
| **CARE, INC.** : | |
| : | |
| **Defendants.** : | |
| : | |

## ANSWER OF DEFENDANT CORRECTIONAL
## MEDICAL CARE INC. TO COMPLAINT

Defendant Correctional Medical Care, Inc. ("CMC") denies the factual allegations in the unnumbered introductory paragraph to the Complaint of Prison Health Services, Inc. ("PHS"). CMC answers the numbered paragraphs of the Complaint as follows:

1.  Admitted.

2.  Admitted only that defendant Emre Umar ("Umar") from time to time resides at 818 Hidden Forrest Drive in Collegeville, PA; that such address is the same as the registered address of CMC; and that Umar has the titles of president and CEO of CMC. The remaining allegations in paragraph 2 are denied.

3.  Admitted only that CMC has its principal place of business at 818 Hidden Forrest Drive in Collegeville, PA, and that CMC, like plaintiff, is in the business of providing health care services to inmates of correctional facilities in the United States. The remaining allegations in paragraph 3 are denied.

4. Admitted only that defendant Umar was previously an officer of Correctional Physician Services ("CPS"), which was a corporation which provided health care services to inmates of correctional facilities, and that defendant Umar held a position as Vice President of Operations for CPS. The remaining allegations in paragraph 4 are denied.

5. Paragraph 5 sets forth conclusions of law to which no response is required. To the extent a response is deemed required, the allegations of paragraph 5 are denied.

6. Admitted.

7. Admitted only that defendant Umar was an officer and employee of CPS, and that CPS provided health care services to inmates of correctional facilities in the states listed. The remaining allegations in paragraph 7 are denied.

8. Admitted that PHS conducted negotiations for the purchase of certain assets of CPS which primarily were contracts to provide prison health care services for prison facilities owned and operated by the Commonwealth of Pennsylvania and the State of New York (the "Assumed Contracts"). Denied that defendant Umar was personally represented by counsel in connection with any such transaction. The remaining allegations in paragraph 8 are denied.

9. Admitted that CPS and PHS entered an contract for the sale of certain assets and contracts of CPS for a purchase price of $14 million. Admitted that the Asset Purchase Agreement, absent its voluminous schedules and exhibits, is attached to the Complaint at Exhibit A. Admitted also that defendant Umar and Dr. Kenan Umar signed the Asset Purchase Agreement. The remaining allegations in paragraph 9 are denied.

10. Admitted.

11. Denied that the noncompetition provision in the Asset Purchase Agreement which purported to restrict CPS was needed to protect the interests of PHS and the acquired business

and assets of CPS. To the extent that the allegations in paragraph 11 purport to characterize the Asset Purchase Agreement, those allegations are denied as stated. The Asset Purchase Agreement is in writing and, in its entirety, speaks for itself.

12. Denied that the Noncompetition Agreements entered into by defendant Umar and Dr. Kenan Umar were necessary as conditions precedent to the Asset Purchase Agreement. Admitted that defendant Umar signed a Noncompetition Agreement on March 29, 2000 and that a copy of that Noncompetition Agreement is attached to the Complaint as Exhibit B.

13. Denied as stated. The Noncompetition Agreement is in writing, and, in its entirety, speaks for itself.

14. Denied as stated. The Noncompetition Agreement is in writing and, in its entirety, speaks for itself.

15. Denied as stated to the extent the allegations in paragraph 15 purport to characterize the Noncompetition Agreement because the Noncompetition Agreement is in writing and, in its entirety, speaks for itself. It is also denied that defendant Umar negotiated the five year term. To the extent the allegations in paragraph 15 suggest that defendant Umar was represented by counsel in connection with the negotiation and execution of the Noncompetition Agreement, such allegations are denied.

16. Denied as stated. The Noncompetition Agreement is in writing and, in its entirety, speaks for itself

17. Denied.

18. Denied as stated. The Noncompetition Agreement is in writing and, in its entirety, speaks for itself. Denied that PHS made a $500,000 payment directly to defendant Umar.

19. Denied as stated. The Noncompetition Agreement is in writing and, in its entirety, speaks for itself.

20. Denied as stated to the extent the allegations in paragraph 20 purport to characterize the Noncompetition Agreement and Consulting Agreement signed by Umar. Those agreements are in writing and, in their entirety, speak for themselves. The allegation in the second sentence of paragraph 20 is admitted.

21. Admitted that defendant Umar has the titles of president and chief executive officer of CMC. The remaining allegations in paragraph 21 are denied.

22. Admitted.

23. Admitted that CMC has competed with PHS for two contracts. The remaining allegations in paragraph 23 are denied.

24. Admitted only that CMC filed papers of incorporation with the Pennsylvania Department of State on or about May 21, 2001, and that the address listed for CMC is 818 Hidden Forrest Drive, Collegeville, PA. The response to paragraph 2 is incorporated by reference.

25. Denied.

26. Admitted, except that after reasonable investigation, CMC is without knowledge or information sufficient to form a belief as to the truth of the allegation that in October of 2001, PHS learned of the formation of CMC with an address identical to defendant Umar.

27. Denied that defendant Umar was directly soliciting PHS clients and potential clients through CMC at or around the time PHS wrote to Umar regarding his noncompetition agreement with PHS. Denied also that PHS did not know of defendant Umar's involvement with

CMC as of the date PHS wrote to Umar about his Noncompetition Agreement. The response to paragraph 26 is incorporated herein.

28. Admitted.

29. Denied.

30. Denied.

31. Denied.

32. Admitted, except that the current contract held by plaintiff PHS does not "expir[e]" on May 30, 2002. PHS voluntarily terminated its agreement with Montgomery County. *See* also the Court's May 8, 2002 Order.

33. Admitted that plaintiff PHS, either on its own or through companies it has acquired, has held the contract for the Montgomery County Correctional Facility ("MCCF") since 1987. Denied that PHS, which unilaterally terminated its contract with MCCF, "aggressively sought renewal" of that contract. After reasonable investigation, CMC is without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 33 and, therefore, denies those allegations.

34. Admitted.

35. Admitted.

36. Admitted that three bids, including those from PHS, CMC, and Correctional Medical Services, were submitted to Montgomery County. CMC is without knowledge or information sufficient to form a belief as to the truth of the allegation that the bid of Correctional Medical Services was rejected early in the bidding process. CMC denies the allegations in the first sentence of paragraph 36.

37. Admitted.

38. Denied.

39. Admitted that the bid documents submitted by CMC to MCCF contain the resume of defendant Umar. The bid documents submitted by CMC to MCCF are in writing, and, in their entirety, speak for themselves. The remaining allegations in paragraph 39 are denied as stated.

40. Denied.

41. After reasonable investigation, CMC is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 41, except that it is denied that CMC submitted a bid to Albany County, NY. Admitted that the documents which CMC submitted to Ulster County stated that Umar was the President and Chief Executive Officer of CMC. The remaining allegations in paragraph 41 are denied.

42. Denied that Umar breached the Noncompetition Agreement. The remaining allegations in paragraph 42 are denied as stated. The April 24, 2002 letter attached as Exhibit C to the Complaint is in writing and, in its entirety, speaks for itself.

43. Denied.

44. Denied.

45. Denied as stated. On May 9, 2002, the Board of MCCF voted to award the new contract to CMC provided that CMC was permitted by the Court to enter into that contract. Admitted that the Board has exclusively negotiated with CMC to date. After reasonable investigation, CMC is without knowledge or information sufficient to form a belief as to the truth of the allegation that PHS is the only other qualified bidder for this contract. In light of the May 8 Order of the Court, it is also denied that PHS was required to wind down its operations by May 30.

46. Paragraph 46 sets forth conclusions of law to which no response is required. To the extent a response is required, CMC denies the allegations in paragraph 46.

## COUNT I

47. CMC incorporates by reference its responses to paragraphs 1-46.

48. Paragraph 48 sets forth conclusions of law to which no response is required. To the extent a response is required, CMC denies the allegations in paragraph 48.

49. Denied as stated. The Noncompetition Agreement and the Asset Purchase Agreement are in writing and, in their entirety, speak for themselves. The response to paragraph 9 is incorporated by reference.

50. Paragraph 50 sets forth conclusions of law to which no response is required. To the extent a response is required, CMC denies the allegations in paragraph 50. The response to paragraph 18 is incorporated by reference.

51. Paragraph 51 sets forth conclusions of law to which no response is required. To the extent a response is required, CMC denies the allegations in paragraph 51.

52. The last sentence of paragraph 52 sets forth conclusions of law to which no response is required. The remaining allegations in paragraph 52 are denied as stated to the extent they purport to characterize the Noncompetition Agreement which is in writing and, in its entirety, speaks for itself. Any remaining allegations in paragraph 52 are denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. The allegations of paragraph 57 relating to breach of contract, improper competition, and irreparable harm constitute conclusions of law to which no response is required.

To the extent a response is required, CMC denies those allegations. Admitted that MCCF has issued a notice of favorable consideration to defendant CMC and has opened exclusive negotiations with CMC on the new contract. The remaining allegations in paragraph 57 are denied. The response to paragraph 45 is incorporated by reference.

58.  Paragraph 58 sets forth conclusions of law to which no response is required. To the extent a response is required, CMC denies the allegations in paragraph 58.

59.  Denied.

60.  Paragraph 60 sets forth conclusions of law to which no response is required. To the extent a response is required, CMC denies the allegations in paragraph 60.

61.  Paragraph 61 sets forth conclusions of law to which no response is required. To the extent a response is required, CMC denies the allegations in paragraph 61.

62.  Paragraph 62 sets forth conclusions of law to which no response is required. To the extent a response is required, CMC denies the allegations in paragraph 62. The responses to paragraphs 45 and 57 are incorporated by reference.

## COUNT II

63.  Defendant CMC incorporates by reference its responses to paragraphs 1 through 62.

64.  Admitted only that CMC knew that defendant Umar had signed the Noncompetition Agreement. The remaining allegations in paragraph 64 are denied.

65.  Admitted that Umar has the titles of president and CEO of CMC, and that CMC has competed against PHS. The remaining allegations in paragraph 65 are denied.

66.  Paragraph 66 sets forth conclusions of law to which no response is required. To the extent a response is required, CMC denies the allegations in paragraph 66.

67. Paragraph 67 sets forth conclusions of law to which no response is required. To the extent a response is required, CMC denies the allegations in paragraph 67.

68. Paragraph 68 sets forth conclusions of law to which no response is required. To the extent a response is required, CMC denies the allegations in paragraph 68.

69. Denied.

## AFFIRMATIVE DEFENSES

1. Plaintiff's complaint fails, in whole or in part, to state claims upon which relief can be granted.

2. Plaintiff's claims are barred by the doctrine of laches.

3. Plaintiff's claims are barred by estoppel.

4. Plaintiff's claims are barred by the doctrine of waiver.

5. Plaintiff's claims are barred by its own unclean hands.

6. Plaintiff's claims for equitable relief are barred because, if there is any remedy at all, there is an adequate remedy at law.

7. Plaintiff's claims are barred by lack of consideration.

8. The restrictive covenant which PHS seeks to enforce against defendant Umar was not made ancillary to the sale of a business or its good will.

9. The restrictive covenant which PHS seeks to enforce against defendant Umar is not reasonably necessary to protect PHS's interest in the assets which it purchased from CPS.

10. The restrictive covenant which PHS seeks to enforce against defendant Umar was not reasonably limited in duration and geographic location.

11. Enforcement of the restrictive covenant as demanded by PHS would create an unreasonable hardship on defendant Umar and CMC.

12.  Enforcement of the restrictive covenant as demanded by PHS would cause unreasonable injury to the public interest in open competition for prison health care contracts.

13.  PHS's demand for enforcement of the restrictive covenant in this matter is for an illegal and improper purpose of restricting competition and restraint of trade.

14.  PHS's attempt to enforce the restrictive covenant to eliminate competition for publicly bid contracts with governmental agencies is in violation of law and public policy requiring open competition for the award of public contracts.

WHEREFORE, defendant CMC respectfully requests that the Court dismiss the Complaint with prejudice, and award CMC its costs of suit and such other and further relief as the Court deems just and appropriate.

MANN, UNGAR, SPECTOR & LABOVITZ, P.C.

Dated: June 7, 2002            BY:_____
                               LARRY H. SPECTOR
                               MICHAEL D. LIPUMA
                               1709 Spruce Street
                               Philadelphia, PA 19103
                               (215) 732-3120

## CERTIFICATE OF SERVICE

I certify that on June 7, 2002, a true and correct copy of the foregoing Answer is being served on counsel below by the means indicated:

> Michael Homans, Esq.
> Mager White & Goldstein, LLP
> One Liberty Place, 44th Floor
> 1650 Market Street
> Philadelphia, PA 19103
> (By Hand Delivery)
>
> Francis X. Clark, Esq.
> The Woods, Suite 705
> 987 Old Eagle School Road
> Wayne, PA 19087
> (By Telecopier)

_____
MICHAEL D. LIPUMA