IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRISON HEALTH SERVICES, INC. | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| EMRE UMAR | : NO. 02-CV-2642 |
| and | : |
| CORRECTIONAL MEDICAL CARE, INC. | : |
| Defendants. | : |

## ORDER

AND NOW this __ day of _____, 2002, upon consideration of the Expedited Motion Of Defendant, Correctional Medical Care, Inc. To Vacate Temporary Restraining Order Of May 8, 2002 Or, Alternatively To Require Posting Of A Bond, it is hereby ORDERED:

1. That the Court's Order in this matter of May 8, 2002 is vacated to the extent that it prohibited and enjoined Defendants from entering into any contract, agreement or negotiations with the Board of Prison Inspectors of Montgomery County, Pennsylvania or the Montgomery County Correctional Facility for providing professional medical services or mental health care services for the Montgomery County Correctional Facility.

[Alternatively]

1. Paragraph 1 of this Court's Order in this matter of May 8, 2002 will remain in effect after June 28, 2002 conditioned upon Plaintiff Prison Health Services, Inc. posting by that date a bond or other security in the amount of $1,000,000.

_____
Surrick, U. S. D. J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRISON HEALTH SERVICES, INC. | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| EMRE UMAR | : NO. 02-CV-2642 |
| and | : |
| CORRECTIONAL MEDICAL CARE, INC. | : |
| Defendants. | : |

## ORDER

And now, this ___ day of June 2002, it is hereby ORDERED that any response of Plaintiff, Prison Health Services, Inc. to the Expedited Motion Of Defendant, Correctional Medical Care, Inc. To Vacate Temporary Restraining Order Of May 8, 2002 Or, Alternatively To Require Posting Of A Bond, shall be filed on or before June 26, 2002.

_____
Surrick, U. S. D. J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRISON HEALTH SERVICES, INC. | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| EMRE UMAR | : NO. 02-CV-2642 |
| and | : |
| CORRECTIONAL MEDICAL CARE, INC. | : FILED JUN 24 2002 |
| Defendants. | : |

**EXPEDITED MOTION OF DEFENDANT, CORRECTIONAL MEDICAL CARE, INC. TO VACATE TEMPORARY RESTRAINING ORDER OF MAY 8, 2002 OR, ALTERNATIVELY TO REQUIRE POSTING OF A BOND**

Defendant Correctional Medical Care, Inc.("CMC") hereby moves:

1) to vacate the Court's temporary restraining order entered May 8, 2002 (Exhibit A hereto); or alternatively,

2) that plaintiff, Prison Health Services, Inc. be ordered to post a bond in the amount of $1,000,000.

Defendant CMC further moves for an expedited briefing schedule on the instant Motion requiring that Plaintiff file a responsive brief by the close of business on Wednesday, June 26, 2002.

DSD:32630.1/SUS034-158660

- 2 -

The grounds for the Motion are set forth in the attached Memorandum.

WOLF, BLOCK, SCHORR & SOLIS-COHEN LLP

DATED: June 24, 2002          BY: _____
                              LARRY H. SPECTOR
                              MICHAEL D. LiPUMA
                              1650 Arch Street
                              Philadelphia, PA 1910-2097
                              215-977-2000
                              COUNSEL FOR DEFENDANT
                              CORRECTIONAL MEDICAL CARE, INC.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRISON HEALTH SERVICES, INC. | : |
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 02-CV-2642 |
| EMRE UMAR | : |
| and | : |
| CORRECTIONAL MEDICAL CARE, INC. | : |
| Defendants. | : |

**MEMORANDUM IN SUPPORT OF EXPEDITED MOTION
OF DEFENDANT, CORRECTIONAL MEDICAL CARE, INC. TO
VACATE TEMPORARY RESTRAINING ORDER OF MAY 8, 2002
OR, ALTERNATIVELY, TO REQUIRE POSTING OF A BOND**

In its memorandum dated May 8, 2002, this Court recited that it was granting the motion for a temporary restraining order sought by plaintiff Prison Health Services, Inc. ("PHS") (Mem. p.18). It did so, however without requiring PHS to post security as required Fed. R. Civ. P. 65(c). Elliott v. Kiesewetter, 98 F.3d 47, 59-60 (3d Cir. 1996).

The TRO Order remains in effect while the parties are awaiting the Court's decision on PHS's Motion for Preliminary Injunction which was heard on May 22nd and 23rd. It has remained in effect, however, longer than the 20 days allowed by Fed. R. Civ. P. 65(b). Nutrasweet Company v. Vit-Mar Enterprises, Inc., 112 F.3d 689, 689, 692, 695 (3d Cir. 1997); Casey v. Planned Parenthood of Southeastern Pennsylvania, 14 F.3d 848.855 (3d Cir. 1994).

Under the terms of the TRO Order, as of June 8, 2002, PHS was to continue to provide Medical Services to the Mongtomery County Correctional Facility ("MCCF") for a period of 60 days or until MCCF entered into a contract for the providing of such services "whichever occurs

first". As indicated on Exhibit B hereto (p. 6), MCCF has now put the contract out for re-bid as a result of which responses to the MCCF Request for Qualifications (RFQ) are due July 8, a meeting of qualified bidders will take place on July 15, proposals will be due on July 22 and the favored bidder will be notified on July 26. The contract is to be finalized or awarded on July 31, and the chosen bidder is to begin providing services on August 8, 2002.

Although the Courts TRO Order of May 8 does not prohibit CMC from bidding to perform a contract with MCCF, it does prohibit CMC from "entering into any contract, agreement or negotiations" to perform services for MCCF. It is therefore apparent, given the above schedule, relating to the bidding award procedure, that even if CMC submits the lowest responsible bid, it could not then enter negotiations to finalize and be awarded the contract.

This situation exists under the terms of the Court's May 8th Order even though the Court may yet find that PHS's motion for a preliminary injunction is to be denied and that the TRO Order of May 8, which was granted without any evidentiary hearing, was erroneously entered. Under these circumstances, a bond is absolutely necessary to secure CMC for the damages it will have suffered if it turns out that it was denied the right to be awarded the contract by the TRO Order. See, Exhibit C hereto, the undersigned's letter to the Court dated June 10, 2002.

In order to allow CMC to meaningfully participate in the rebidding process, the TRO Motion - now in effect longer than the 20 days permitted - should be vacated. Alternatively, if the TRO Order is to remain in effect pending the determination of its preliminary injunction motion (and thereafter if the motion is decided in its favor) PHS should be required to post a $1,000,000 bond.

Respectfully,

WOLF, BLOCK, SCHORR & SOLIS-COHEN LLP

DATED: June 24, 2002        BY: _____
**LARRY H. SPECTOR**
**MICHAEL D. LiPUMA**
1650 Arch Street
Philadelphia, PA 1910-2097
215-977-2000
**COUNSEL FOR DEFENDANT**
**CORRECTIONAL MEDICAL CARE, INC.**

- 3 -

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PRISON HEALTH SERVICES, INC.      :
                                  :      CIVIL ACTION NUMBER
              v.                  :
                                  :      02-CV-2642
EMRE UMAR AND CORRECTIONAL        :
MEDICAL CARE, INC.                :

### ORDER

AND NOW, this 9th day of May, 2002, it is ORDERED as follows:

1. Defendants are prohibited and enjoined from entering into any contract, agreement or negotiations with the Board of Prison Inspectors of Montgomery County Pennsylvania or the Montgomery County Correctional Facility for providing professional medical services or mental health care services for the Montgomery County Correctional Facility.

2. A hearing on Plaintiff's Motion for Preliminary Injunction is scheduled for May 17, 2002, at 10:00 a.m.

3. Plaintiff shall continue to provide professional medical services and mental health care services to the Montgomery County Correctional Facility pursuant to the terms of Plaintiff's current contract with MCCF for a period of thirty (30) days from the date of this Order. Thereafter Plaintiff shall continue to provide said services, in accordance with the terms contained in the bid submitted by CMC for said medical and mental health care services at MCCF, for an additional period of sixty (60) days or until MCCF enters into a contract for the providing of medical services and mental health care services to MCCF, whichever occurs first.

**EXHIBIT A**

4. In the event that MCCF must renew the bidding process for providing medical services and mental health care services at MCCF, Plaintiff will submit a bid that is no higher than the bid which it originally submitted.

AND IT IS SO ORDERED.

R. Barclay Surrick, Judge

TOTAL P.21

Case 2:02-cv-02642-RBS    Document 20    Filed 06/24/2002    Page 9 of 19

Francis Clark   610-687-4640

Larry Spector 215-790-1366

Michael Lipuma 215-790-1366

Michael Homans 215-569-6925

Carol Mager 215 569-6925

Lee Albert 215-481-0271

Barry Miller 610-279-9187

# INSTRUCTIONS TO OFFERORS

THE CONTRACT FOR THE SERVICES CONTAINED IN THIS SOLICITATION SHALL BE BETWEEN THE BOARD OF INSPECTORS OF MONTGOMERY COUNTY CORRECTIONAL FACILITY AND THE PROVIDER OF PROFESSIONAL MEDICAL AND/OR MENTAL HEALTH CARE SERVICES WHICH IS SELECTED.

## PROCEDURE TO BE FOLLOWED

The Board of Inspectors will solicit Requests for Qualifications from organizations desiring to supply Professional Medical and/or Mental Health Care Services to the inmates at the Facility.

### STEP I - PRISON BOARD OF INSPECTORS ISSUES REQUEST FOR QUALIFICATIONS - (RFQ)

An RFQ is issued describing the qualifications that must be met by the supplier of the Professional Medical and/or Mental Health Care services to be provided.

### STEP II - DETERMINATION OF RESPONSIVENESS AND RESPONSIBILITY

Each response shall be evaluated to determine if the Respondent meets the qualification criteria of the solicitation and if the technical portions of the response are acceptable. Discussions may be held with individual Respondents who meet the qualification and experience criteria in order to clarify any technical aspect of their responses.

### STEP III - NOTIFICATION OF REJECTED RESPONDENTS

Organizations deemed not to meet the qualification, experience or technical requirements of the solicitation will be advised of the decision of the Prison Inspectors in not accepting their Qualification Package.

### STEP IV - REQUEST FOR PROPOSAL

Organizations whose initial responses have been accepted and which have been determined to be qualified will be solicited, through the issuance of a Request for Proposal (RFP), to submit a proposal including the remuneration of the services to be provided. A Bid Bond or Consent of Surety Bond and Performance Bond will not be required to be submitted with the Proposal, but will be required after Notification of Favorable Consideration. A meeting will be held at the Montgomery County Correctional Facility on July 15, 2002 at 10:00 A.M., of the approved Respondents, at which time specifications will be provided concerning the Professional Medical and/or Mental Health Care services to be furnished.

### STEP V - PROPOSALS DUE

Sealed Proposals will thereafter be received by the Board of Inspectors and/or Designee at the Montgomery County Correctional Facility until 9:30 A.M., prevailing time on Monday, July 22, 2002. Proposals will be opened publicly at the Meeting on that date and at that time.

### STEP VI - NOTIFICATION OF FAVORABLE CONSIDERATION AND NEGOTIATIONS THEREAFTER

On Friday, July 26, 2002, the Board of Inspectors will publicly make known the identity of the Proposer/Proposers whose Response/Responses have received Favorable Consideration. The ultimate award, when made, will be awarded to the organization determined by the Board of Prison Inspectors, in its sole discretion, to have submitted the best Proposal, taking into

2

**EXHIBIT B**

Consideration the Proposers qualifications, proposed program of services and the cost thereof. However, the Board of Prison Inspectors reserves the unqualified right to award this contract to others than the Proposers with the lowest priced Proposal.

In addition, the Board of Inspectors may elect to negotiate specifications, terms and conditions, including final contract price with one or more of the Proposers receiving Favorable Consideration, all at the sole discretion of the Board of Inspectors.

### STEP VII - FINALIZE CONTRACT
The Board of Inspectors in conjunction with the Administration of the Facility will negotiate and finalize a contract with the selected organization on or before July 31, 2002.

### STEP VIII - SERVICES TO COMMENCE
Services as agreed upon shall commence August 8, 2002.

### SUBMISSION OF RESPONSES
Response Forms are furnished in triplicate. The original and two copies of the Response Form shall be signed and submitted in a sealed envelope or sealed package to the Office of the Warden no later than the date and time as specified in the Request for Qualifications and the Request for Proposal. Timely submission is the sole responsibility of the Respondent. Responses received after the specified time will be rejected. The Response envelope or package shall clearly indicate the identity of the Respondent, including its address, the date and time of the opening for the Response. The time and date of receipt shall be indicated on the envelope or package by the Warden's Office. Responses received in the Office of the Warden after the time and date specified in the Request for Qualifications and the Request for Proposal will not be opened or considered.

### COLLUSION AMONG RESPONDENTS
Multiple responses from an individual, firm, partnership, corporation or association under the same or different names are subject to rejection unless specifically permitted in the solicitation. Reasonable grounds for believing that a Respondent has an interest in more than one response for the work contemplated may result in rejection of all responses in which the Respondent is interested. Any or all responses will be rejected if there is any reason for believing that collusion exists among the Respondents. Participants in such collusion may not be considered in future bids or proposals for the same work. Each Respondent, by submitting a response, certifies that it is not a party to any collusive action. Nothing in this section will preclude a firm acting as a subcontractor to be included as a subcontractor for two or more prime contractors submitting a response for the work.

### EXPENSES INCURRED IN PREPARING RESPONSE
The County of Montgomery and/or the Board of Prison Inspectors accepts no responsibility for any expense incurred in the preparation and presentation of a response. Such expense is to be borne exclusively by the Respondent.

### QUALIFICATION OF RESPONDENTS
Each Respondent may be required, before the award of any contract, to show to the satisfaction of the Board of Inspectors that it has the necessary facilities, ability, and financial resources to furnish the services herein specified in a satisfactory and professional manner. The Respondent may also be required to show past history and references which will enable

3

the Board of Inspectors to be satisfied as to the Respondent's qualifications (see Respondents Response Requirement section below). Failure to qualify according to the foregoing requirements will justify response rejection by the Board of Inspectors.

## DEBARMENT STATUS

By submitting a response, the Respondent certifies that it is not currently debarred from submitting bids and/or proposals on contracts with Montgomery County, Pennsylvania or any political subdivision or agency of the Commonwealth of Pennsylvania, and is not an agency of any person or entity that is currently debarred from contracting with Montgomery County, Pennsylvania or any political subdivision or agency of the Commonwealth of Pennsylvania.

## OBJECTIVES OF THE RFQ

Each response hereto will be evaluated as to its achievement and compliance with the following stated objectives.

1. To deliver high quality health care services that can be audited against established standards.

2. To operate the health care program in a cost-effective manner with full reporting and accountability to the Warden and or designate and to the Board of Inspectors.

3. To operate the health care program at full staffing and use only licensed, certified and professionally trained personnel.

4. To implement a written health care plan with clear objectives, policies, procedures for annual evaluation of compliance.

5. To operate the health care program in compliance with standards established by the National Commission on Correctional Health Care (NCCHC) and maintain the existing NCCHC accreditation.

6. To maintain an open and cooperative relationship with the Administration, Board of Inspectors, and Staff of the Montgomery County Correctional Facility.

7. To provide a comprehensive program for continuing staff education at the Montgomery County Correctional Facility.

8. To maintain complete and accurate records of care and to collect and analyze health statistics on a regular periodic basis.

9. To operate the health care program in a humane manner with respect to the inmate's right to basic health care services.

10. To provide for a fair and objective evaluation of proposals that will result in a mutually satisfactory contract between the successful proposer and the Montgomery County Correctional Facility.

4

## RESPONSE REQUIREMENTS

The Board of Inspectors requires that any Respondent meet the following requirements. Failure to meet each of these requirements will result in the Respondent's disqualification from further consideration. Only those Respondents who meet all of the following requirements will be asked to submit a price proposal. Responses, including all appropriate documentation, should be provided to each requirement in the order the requirement is listed hereafter.

1. The Respondent must be an organization existing for the primary purpose of providing Professional Medical and/or Mental Health Care services within the Correctional Facilities, Institutional Facilities, or to a Medicaid Population.

2. The Respondent must be have an Executive Management Team with at least ten (10) years of experience in administering Professional Medical and/or Mental Health Care Programs in an Institutional setting comparable in population to that of the Montgomery County Correctional Facility (i.e., 1200 patient lives) or a Medicaid Population at least comparable in number.

3. The Respondent will be required to provide resumes of their proposed Onsite Management Staff (The Medical Director and Program Administrator) who will direct the operation of the Health Care Program at the Montgomery County Correctional Facility immediately upon notification of favorable consideration and negotiation thereafter. The Medical Director must have at least two (2) years of experience in providing medical services in an institutional environment. The Program Administrator must have at least two (2) years of experience in administering comprehensive medical programs, preferably in a correctional environment.

4. The Respondent must provide a minimum of three (3) references from prior correctional facility personnel for which the respondent of the Executive Management Team has previously provided Professional Medical and Mental Health Care Services.

5. The Respondent must carry Professional Liability Insurance on their Physicians in the amount of Five hundred Thousand/One Million Five Hundred Thousand, aggregate basic limit and Seven Hundred Thousand/Two Million One Hundred Thousand aggregate, catastrophe Fund (State of Pennsylvania). The Respondent must also carry Professional Liability Insurance on all other medical personnel in an amount of One Million Dollars ($1,000,000) per occurrence and Three Million Dollars ($3,000,000) in the aggregate. If "Claims Made" is the form of coverage provided, then continuing liability coverage ("Tail") of at least two (2) years or of sufficient time to cover the then Stature of Limitations for suits concerning alleged improper delivery of Medical and/or Health Care, whichever period is longer.

6. The Respondent or it's Executive Management Team must have demonstrated its experience and the quality of its care by having obtained through its own initiative and efforts (not inherited from a previous provider) the accreditation of the National

5

Commission on Correctional Health Care (NCCHC) in a minimum of three (3) correctional facilities at least one of which is a size comparable to the Montgomery County Correctional Facility.

7. The Respondent must submit the previous two years' audited financial statements. If the Respondent is a subsidiary company, then the financial statements of the subsidiary, not the parent corporation, must be submitted, or the net worth of the Parent Company. Please advise us in writing that the assets of the Parent Company are amenable to the claims and or judgements of the subsidiary with the same effect as if applied directly to the principle. If there is not two years previous history Respondent must post a Performance Bond in the amount of one year annual bid price. This will be required on a yearly basis.

8. The Respondent must submit a signed Authorization- Release in favor of the Board of Prison Inspectors so that inquiry may be made of any and all organizations to which Respondent has furnished or is furnishing, Professional Medical and/or Mental Health Care services.

The following dates are guidelines, which may be changed at the pleasure of the Board of Prison Inspectors:

| | |
|---|---|
| Advertise Request for Qualification (RFQ): | 06/20/02 |
| Responses to RFQ due: | 07/08/02 |
| Announcement of Approved RFQ Responses: | 07/11/02 |
| Notification of RFQ rejection: | 07/11/02 |
| Meeting/Request for Proposal Meeting: | 07/15/02 |
| Proposals Due: | 07/22/02 |
| Notification of Favorable Consideration: | 07/26/02 |
| Finalize Contract or Award Same: | 07/31/02 |
| Commence Services (Start-up): | 08/08/02 |

Questions concerning the Request for Qualifications and Request for Proposals must be directed in writing to:

Lawrence V. Roth, Jr., Warden
Montgomery County Correctional Facility
60 Eagleville Road
Norristown, Pennsylvania 19403-1400

Dennis J. Molyneaux, Assistant Warden
Montgomery County Correctional Facility
60 Eagleville Road
Norristown, Pennsylvania 19403-1400

**BY HAND DELIVERY**
June 10, 2002

The Honorable R. Barclay Surrick
U.S. District Court for the
    Eastern District of Pennsylvania
U.S. Courthouse, Room 4001
601 Market Street
Philadelphia, PA 19106

    Re:    Prison Health Services, Inc. v. Correctional Medical Care, Inc. and Emre Umar; Civil Action No. 02-2642

Dear Judge Surrick:

    As a result of the Court's Memorandum and Order granting the TRO motion of plaintiff Prison Health Services, Inc., since May 8, 2002 PHS has provided professional medical services to MCCF under the terms of its last existing contract with MCCF. According to the Order, starting on June 8, 2002 it was to begin doing so under the terms contained in the bid submitted by CMC for the providing of such services. PHS is now to abide by the terms of that bid for a period of 60 days or until MCCF enters into a contract for the providing of such services to MCCF, "whichever occurs first".

    The TRO Order of May 8, 2002 is still in effect pending the Court's ruling on PHS's motion for preliminary injunction which was heard on May 22 and 23. It has remained in effect longer than the twenty days suggested by Fed. R. Civ. P. 65(b), Nutrasweet Company v. Vit-Mar Enterprises, Inc., 112 F. 3d 689, 692, 695 (3d Cir. 1997); Casey v. Planned Parenthood of Southeastern Pennsylvania, 14 F. 3d 848, 855 (3d Cir. 1994); and without PHS having provided security as required by Fed. R. Civ. P 65(c), Elliott v. Diesewetter, 98 F. 3d 47, 59-60 (3d Cir. 1996).

**EXHIBIT C**

The purpose of this letter is 1) to point out that the TRO Order could now result in a change in the status quo pending the decision on the preliminary injunction motion; and 2) to request that the Court now require PHS to post a bond pending the determination of that motion.

Even though the preliminary injunction motion is still pending, MCCF is now free to enter into a contract with PHS or any other provider <u>other than defendant Correctional Medical Care, Inc.</u> It could do so either through direct negotiation or by putting the contract out for rebid. If it does act in the next 60 days, then the status quo whereby CMC could still be awarded the contract if it prevailed on the preliminary injunction motion, will have been violated. We understand that MCCF is in fact considering, or has already begun, negotiating directly with PHS as the runner-up bidder to CMC and that it will rebid the contract if those negotiations are not fruitful.

Of course the reason CMC defended the motion for preliminary injunction was to preserve its ability to enter the three to five year contract with MCCF which it would have been awarded on May 9, or again on May 30, but for the Court's TRO of May 8. If, however, MCCF enters into a contract with PHS or any other party before the Court rules on the preliminary injunction motion, then if the Court's ruling is eventually in favor of CMC on that motion, CMC will have lost the benefit of the ruling – the contract will have already been awarded to someone else. In that case it will have been established that CMC was erroneously restrained from entering the MCCF contract and that it lost the profit it would have earned over the three to five year life of that contract.

We therefore respectfully suggest that PHS should no longer be entitled to the effect of the Court's TRO without posting a bond to secure CMC against the loss of the MCCF contract. We would be willing to participate in a conference or conference call to discuss this issue.

                                                Respectfully,

                                                LARRY H. SPECTOR

LHS/co
cc:    Michael Homans, Esq.  (by fax and regular mail)

Lee Albert, Esq. (by fax and regular mail)
Francis X. Clark, Esq. (by fax and regular mail)
Barry M. Miller, Esq. (by fax and regular mail)

- 4 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON June 24, 2002, a copy of the foregoing document, together with all supporting papers, is being served by hand delivery on Michael Homans, Esq., Mager, White & Goldstein, One Liberty Place, 21st Floor, Philadelphia, PA 19103, and by fax upon Francis Clark, Esquire, 987 Old Eagle School Road, Suite 705, Wayne, PA 19087.

_____
Michael D. LiPuma