IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRISON HEALTH SERVICES, INC., : <br><br> Plaintiff, : <br> : <br> v. : <br> : <br> EMRE UMAR : <br><br> and : <br><br> CORRECTIONAL MEDICAL : <br> CARE, INC., : <br> : <br> Defendants. : | CIVIL ACTION <br><br> NO. 02-CV-2642 |

**MEMORANDUM OF DEFENDANT CORRECTIONAL
MEDICAL CARE, INC. IN OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND COMPLAINT**

I.  **INTRODUCTION**

Plaintiff Prison Health Services, Inc. ("PHS") initially sought a preliminary injunction based on allegations that defendant Emre Umar breached his Noncompetition Agreement with PHS and that defendant Correctional Medical Care, Inc. ("CMC") tortiously interfered with that Agreement. PHS now moves to amend its Complaint seeking, among other things, to join Mr. Umar's wife, Maria Carpio, as a defendant. PHS's theory is that making Ms. Carpio individually liable for the alleged tortious interference by CMC "would conform to the evidence" first produced in discovery and then presented at the preliminary injunction hearing.

Leave to file the amendment should be denied because the proposed amendment would be futile. There was no evidence exposed in discovery or produced at the preliminary injunction

DSD:34748.1/COR199-159752

hearing that would make Maria Carpio directly liable for tortious interference. PHS does not offer any support for its contentions to the contrary.

Nor are there any allegations in the proposed Amended Complaint that could make Ms. Carpio liable for the alleged tortious conduct of CMC. There are no allegations that could support a piercing the corporate veil theory. The only other possible theory of liability, that she participated in the allegedly tortious conduct of CMC, is based only on the legally insufficient allegations that she owns part of CMC, knew about Mr. Umar's Noncompetition Agreement and is married to Mr. Umar.

## II.   BACKGROUND

PHS filed its original Complaint in this matter in early May, 2002. It alleged that defendant Emre Umar breached his Noncompetition Agreement with PHS and that defendant CMC tortiously interfered with the Agreement.

Maria Carpio, Emre Umar's wife, was not named as a defendant in the original Complaint. PHS did refer to her, however, alleging that "[Emre] Umar placed his ownership of the firm, CMC, under the name of his wife, Maria Carpio, in order to conceal his involvement in CMC and his knowing breach of the Noncompetition Agreement" (Comp. ¶ 25); that Maria Carpio "has no active role in operating or managing CMC, and has no apparent knowledge or experience in providing prison health services. Her name is not referenced in CMC's promotional materials submitted to prospective customers" (Id.); and that Emre Umar breached his Noncompetition Agreement with PHS "by acting as an officer, employee and agent, and indirectly as an owner" of CMC (Comp. ¶ 53). The allegation of "indirec[t]" ownership was apparently based on the fact that Mr. Umar, who owns no shares of CMC, is married to Ms. Carpio, who does own CMC shares.

After filing the Complaint, PHS deposed both Emre Umar and Maria Carpio at length. Thereafter, on May 22-23, 2002, the court held a hearing on PHS's request for a preliminary injunction. On July 2, 2002, the court issued its Memorandum and Order granting the preliminary injunction, finding that:

> CMC will not be permitted to compete with Plaintiff in the provision of correctional healthcare services as long as it remains associated with Emre Umar or receives assistance from him in any capacity.

In footnote 20 to that finding, the Court noted as follows:

> It is unclear to the Court whether Plaintiff attempts to argue that CMC may be enjoined from competing with Plaintiff simply because Emre Umar has an equitable interest in CMC as a result of his marriage to Ms. Carpio. Although citing Fidelity Bank v. Carroll, 610 A.2d 481 (Pa. Super. Ct. 1992) for the proposition that Emre Umar has an equitable interest in CMC, Plaintiff cites no cases to support a ruling that such a relationship alone would be grounds to hold liable and possibly enjoin CMC. In our view, this connection is insufficient.

(July 2 Opinion at p. 40 and n. 20).

PHS has not done anything to pursue its claims since it prevailed against Mr. Umar on the preliminary injunction motion. Now, six months after the hearing, it seeks, inter alia, to join Maria Carpio in a proposed Amended Complaint, Count II of which alleges that, along with CMC itself, Ms. Carpio should be liable for intentional interference with the contract between Mr. Umar and PHS. There are no allegations in the proposed Amended Complaint that Emre Umar is now involved with CMC in any manner, other than by virtue of his marriage to Ms. Carpio.

In Count II of the proposed Amended Complaint, PHS alleges that Ms. Carpio "knew that defendant Mr. Umar was subject to a Noncompetition Agreement," and that she "assisted Mr. Umar in actively competing against PHS" (Amended Comp. at ¶¶ 66-67). Other than the fact of her marriage to Mr. Umar, and her ownership interest in CMC, PHS does not allege how Ms. Carpio allegedly "assisted Mr. Umar in actively competing against PHS."

## III. ARGUMENT

A district court may deny leave to amend on grounds that amending the complaint would be futile. In re Burlington Coat Factory Securities Fraud Litigation, 114 F.3d 1410, 1434 (3d Cir. 1997). An amendment is futile if it would not survive a motion to dismiss for failure to state a claim upon which relief may be granted. Id. In determining whether an amendment would be futile, this Court must apply the same standard of sufficiency as that required under Fed.R.Civ.P. 12(b)(6).

### A. There Are No Allegations to Support a Claim that Ms. Carpio Is Directly Liable for Tortious Interference.

In Count II of the proposed Amended Complaint, PHS alleges that Ms. Carpio "knew that defendant Mr. Umar was subject to a Noncompetition Agreement," and that she "assisted Mr. Umar in actively competing against PHS" (Amended Comp. at ¶¶ 66-67). Notwithstanding that it had discovery and an injunction hearing, and that it claims its obligations conform to the evidence from those stages of this case, PHS does not now allege a single fact concerning how Ms. Carpio allegedly "assisted Mr. Umar in actively competing against PHS."

It therefore appears that PHS contends Ms. Carpio should be individually liable solely because she is married to Mr. Umar. As noted above, however, this Court has already considered and rejected the argument that CMC should be held liable "simply because Emre Umar has an equitable interest in CMC as a result of his marriage to Ms. Carpio." That finding is binding as the law of the case and renders futile PHS's attempt to make Ms. Carpio directly liable to PHS. See United States v. Union Corp., 194 F.R.D. 223, 238 (E.D. Pa. 2000) (denying leave to amend counterclaims under law of the case doctrine where court previously rejected theory underlying proposed amendments).

### B. There Are No Allegations That Would Make Ms. Carpio Indirectly Liable Based on the Conduct of CMC.

There are typically only two ways that an agent for a corporation can be held individually liable for the acts of the corporation itself. One is if the court pierces the corporate veil; the other is if the individual agent participated in the wrongful act. Wicks v. Milzoco Bldrs., Inc., 503 Pa. 614, 470 A.2d 86, 89-90 (1983). The proposed Amended Complaint does not allege facts which would support holding Ms. Carpio individually liable under either theory.

#### 1. There Are No Allegations of Piercing.

Under Pennsylvania law, it is well established that a corporation shall be regarded as an independent entity and that there is a strong presumption against piercing the corporate veil. Lumux Indus., Inc. v. Aultman, 543 Pa. 38, 669 A.2d 893, 895 (1995). Here, PHS contends that CMC, a corporation, bid on the Ulster County and Montgomery County contracts; that CMC was awarded the two contracts; and that PHS was damaged as a result. PHS has not proposed to add any allegations that CMC is undercapitalized or that it failed to adhere to corporate formalities. Nor are there any allegations that Ms. Carpio intermingled her personal affairs with those of CMC, or that Ms. Carpio used the corporate form of CMC to perpetrate a fraud. Lumux, 543 Pa. 38, 669 A.2d at 895 (reciting factors which may justify piercing the corporate veil). There is thus no basis for piercing the corporate veil of CMC to hold Ms. Carpio individually liable. See Brethwaite v. Cincinnati Milacron, No. Civ. A 94-3621, 1995 WL 232519 at *6 (E.D.Pa. Apr. 19, 1995) (denying motion for leave to amend to join party in absence of allegations which would support piercing the corporate veil).

### 2. **There Are Insufficient Allegations of Ms. Carpio's Participation in the Alleged Tort.**

The only other theory under which Ms. Carpio could be held individually liable is if she actively participated in the alleged interference by CMC. Here, PHS must show that Ms. Carpio affirmatively acted to perpetrate the interference. As the Pennsylvania Supreme Court stated in explaining the participation theory:

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.

Wicks, 503 Pa. 614, 470 A.2d at 90.

Here, PHS alleges only that Ms. Carpio <u>owned</u> CMC and <u>knew</u> of Mr. Umar's Non-Competition Agreement with PHS. These are passive acts of nonfeasance which cannot give rise to individual liability on Ms. Carpio's part for the conduct of CMC. In the absence of any allegation that Maria Carpio actively took part in the commission of allegedly tortious conduct by CMC, PHS cannot state a viable cause of action against her individually.

## IV. CONCLUSION

The proposed amendment would be futile. PHS's Motion to Amend therefore should be denied.

                    WOLF, BLOCK, SCHORR & SOLIS-COHEN LLP

DATED: December 2, 2002     BY: _____
                                            LARRY H. SPECTOR
                                            MICHAEL D. LiPUMA
                                            1650 Arch Street
                                            Philadelphia, PA 19103-2097
                                            215-977-2000
                                            COUNSEL FOR DEFENDANT
                                            CORRECTIONAL MEDICAL CARE, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON December 2, 2002, a copy of the foregoing document, together with all supporting papers, is being served by hand delivery on Michael Homans, Esq., Mager, White & Goldstein, One Liberty Place, 21st Floor, Philadelphia, PA 19103, and by fax upon Francis Clark, Esquire, 987 Old Eagle School Road, Suite 705, Wayne, PA 19087.

                                                                                 Michael D. LiPuma