IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRISON HEALTH SERVICES, INC. | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| EMRE UMAR, et al. | : NO. 02-CV-2642 |
| Defendants. | : |

### ANSWER OF CORRECTIONAL MEDICAL CARE, INC. AND MARIA UMAR TO FIRST AMENDED COMPLAINT

**ANSWER**

1. Admitted.

2. Admitted only that defendant Emre Umar ("Umar") from time to time resides at 818 Hidden Forrest Drive in Collegeville, PA; that such address is the same as the registered address of CMC; and that Umar previously had the titles of president and CEO of CMC. The remaining allegations in paragraph 2 are denied.

3. Admitted only that CMC has its principal place of business at 818 Hidden Forrest Drive in Collegeville, PA, and that CMC, like plaintiff, is in the business of providing health care services to inmates of correctional facilities in the United States. The remaining allegations in paragraph 3 are denied.

4. Admitted.

5. Admitted only that defendant Umar was previously an officer of Correctional Physician Services ("CPS"), which was a corporation which provided health care services to inmates of correctional facilities, and that defendant Umar held a position as Vice President of Operations for CPS. The remaining allegations in paragraph 4 are denied.

6. Denied.

7. Admitted.

8. Admitted only that defendant Umar was an officer and employee of CPS, and that CPS provided health care services to inmates of correctional facilities in the states listed. The remaining allegations in paragraph 8 are denied.

9. Admitted that PHS conducted negotiations for the purchase of certain assets of CPS which primarily were contracts to provide prison health care services for prison facilities owned and operated by the Commonwealth of Pennsylvania and the State of New York (the "Assumed Contracts"). Denied that defendant Umar was personally represented by counsel in connection with any such transaction. The remaining allegations in paragraph 9 are denied.

10. Admitted that CPS and PHS entered a contract for the sale of certain assets and contracts of CPS for a purchase price of $14 million. Admitted that the Asset Purchase Agreement, absent its voluminous schedules and exhibits, is attached to the Complaint at Exhibit A. Admitted also that defendant Umar and Dr. Kenan Umar signed the Asset Purchase Agreement. The remaining allegations in paragraph 10 are denied.

11. Admitted.

12. Denied that the noncompetition provision in the Asset Purchase Agreement which purported to restrict CPS was needed to protect the interests of PHS and the acquired business and assets of CPS. To the extent that the allegations in paragraph 12 purport to characterize the Asset Purchase Agreement, those allegations are denied as stated. The Asset Purchase Agreement is in writing and, in its entirety, speaks for itself.

13. Denied that the Noncompetition Agreements entered into by defendant Umar and Dr. Kenan Umar were necessary as conditions precedent to the Asset Purchase Agreement.

Admitted that defendant Umar signed a Noncompetition Agreement on March 29, 2000 and that a copy of that Noncompetition Agreement is attached to the Complaint as Exhibit B.

14. Denied as stated. The Noncompetition Agreement is in writing and speaks for itself.

15. Denied as stated. The Noncompetition Agreement is in writing and speaks for itself.

16. Denied as stated to the extent the allegations in paragraph 16 purport to characterize the Noncompetition Agreement because the Noncompetition Agreement is in writing and speaks for itself. It is also denied that defendant Umar negotiated the five year term. To the extent the allegations in paragraph 16 suggest that defendant Umar was represented by counsel in connection with the negotiation and execution of the Noncompetition Agreement, such allegations are denied.

17. Denied as stated. The Noncompetition Agreement is in writing and speaks for itself

18. Denied.

19. Denied as stated. The Noncompetition Agreement is in writing and speaks for itself. Denied that PHS made a $500,000 payment directly to defendant Umar.

20. Denied as stated. The Noncompetition Agreement is in writing and, in its entirety, speaks for itself.

21. Denied as stated to the extent the allegations in paragraph 21 purport to characterize the Noncompetition Agreement and Consulting Agreement signed by Umar. Those agreements are in writing and speak for themselves. The allegation in the second sentence of paragraph 21 is admitted.

22. Denied.

23. Admitted.

24. Admitted that CMC has competed with PHS. The remaining allegations in paragraph 24 are denied.

25. Admitted only that CMC filed papers of incorporation with the Pennsylvania Department of State on or about May 21, 2001, and that the address listed for CMC is 818 Hidden Forrest Drive, Collegeville, PA. The response to paragraph 2 is incorporated by reference.

26. Denied.

27. Admitted, except that after reasonable investigation, CMC is without knowledge or information sufficient to form a belief as to the truth of the allegation that in October of 2001, PHS learned of the formation of CMC with an address identical to defendant Umar.

28. Denied.

29. Admitted only that CMC competed with PHS. The remaining allegations are denied.

30. Admitted.

31. Denied.

32. Denied.

33. Denied.

34. Admitted, except denied that the contract then held by plaintiff PHS expired on May 30, 2002.

35. Admitted that plaintiff PHS, either on its own or through companies it has acquired, has held the contract for the Montgomery County Correctional Facility ("MCCF")

since 1987. Denied that PHS, which unilaterally terminated its contract with MCCF, "aggressively sought renewal" of that contract. After reasonable investigation, CMC is without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 35 and, therefore, denies those allegations.

      36.    Admitted.

      37.    Admitted.

      38.    CMC denies the allegations in the first sentence of paragraph 38. Admitted that three bids, including those from PHS, CMC, and Correctional Medical Services, were submitted to Montgomery County. CMC is without knowledge or information sufficient to form a belief as to the truth of the allegation that the bid of Correctional Medical Services was rejected early in the bidding process.

      39.    Denied.

      40.    Admitted.

      41.    Denied.

      42.    Admitted that the bid documents submitted by CMC to MCCF contain the resume of defendant Umar. The bid documents submitted by CMC to MCCF are in writing and speak for themselves. The remaining allegations in paragraph 42 are denied as stated.

      43.    Denied.

      44.    After reasonable investigation, CMC is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 44, except that it is denied that CMC submitted a bid to Albany County, NY. Admitted that the documents which CMC submitted to Ulster County stated that Umar was then the President and Chief Executive Officer of CMC. The remaining allegations in paragraph 44 are denied.

45. Denied that Umar breached the Noncompetition Agreement. The remaining allegations in paragraph 45 are denied as stated. The April 24, 2002 letter attached as Exhibit C to the Complaint is in writing and speaks for itself.

46. Denied.

47. Denied.

48-63. These are allegations are not directed at defendants CMC and Maria Umar.

64. Defendants CMC and Maria Umar incorporate by reference their responses to paragraphs 1 through 63.

65. Admitted only that CMC knew that defendant Umar had signed the Noncompetition Agreement. The remaining allegations in paragraph 65 are denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73-90. These allegations are not directed at defendants CMC and Maria Umar.

## AFFIRMATIVE DEFENSES

1. Plaintiff's complaint fails, in whole or in part, to state claims upon which relief can be granted.

2. Plaintiff's claims are barred by the doctrine of laches.

3. Plaintiff's claims are barred by estoppel.

4. Plaintiff's claims are barred by the doctrine of waiver.

5. Plaintiff's claims are barred by its own unclean hands.

6. Plaintiff's claims for equitable relief are barred because, if there is any remedy at all, there is an adequate remedy at law.

7. Plaintiff's claims are barred by lack of consideration.

8. The restrictive covenant which PHS seeks to enforce against defendant Umar was not made ancillary to the sale of a business or its good will.

9. The restrictive covenant which PHS seeks to enforce against defendant Umar is not reasonably necessary to protect PHS's interest in the assets which it purchased from CPS.

10. The restrictive covenant which PHS seeks to enforce against defendant Umar was not reasonably limited in duration and geographic location.

11. Enforcement of the restrictive covenant as demanded by PHS would create an unreasonable hardship on defendant Umar and CMC.

12. Enforcement of the restrictive covenant as demanded by PHS would cause unreasonable injury to the public interest in open competition for prison health care contracts.

13. PHS's demand for enforcement of the restrictive covenant in this matter is for an illegal and improper purpose of restricting competition and restraint of trade.

14. PHS's attempt to enforce the restrictive covenant to eliminate competition for publicly bid contracts with governmental agencies is in violation of law and public policy requiring open competition for the award of public contracts.

                                          **WOLF, BLOCK, SCHORR & SOLIS-COHEN LLP**

**DATED: April 9, 2003**                       **BY: _____**
                                                     **LARRY H. SPECTOR**
                                                     **MICHAEL D. LiPUMA**
                                          **1650 Arch Street**
                                          **Philadelphia, PA 1910-2097**
                                          **215-977-2000**

                                          **Counsel for Defendants**
                                          **Correctional Medical Care, Inc. and Maria Umar**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT ON April 9, 2003, a copy of the Answer of Correctional Medical Care, Inc. and Maria Umar to First Amended Complaint, is being served by first class mail on Michael Homans, Esq., Mager, White & Goldstein, One Liberty Place, 21st Floor, Philadelphia, PA 19103, and by first class mail upon Francis Clark, Esquire, 987 Old Eagle School Road, Suite 705, Wayne, PA 19087.

_____
Larry H. Spector